UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JASON WILLIAM MILLER,

          Plaintiff

    v.

WARDEN JAMES, *et al.*

          Defendants.

CIVIL ACTION NO. 3:25-CV-02550

(MEHALCHICK, J.)

**MEMORANDUM**

Before the Court is a complaint filed by Plaintiff Jason William Miller ("Miller"). (Doc. 1). Also pending are Miller's motions for leave to proceed *in forma pauperis* and for appointment of counsel. (Doc. 3; Doc. 7; Doc. 14). The Court will grant the motions to proceed *in forma pauperis*, screen the complaint pursuant to 28 U.S.C. § 1915A, dismiss claims against two defendants, and serve the complaint on the remaining three defendants. The Court will also deny the motion for appointment of counsel as premature.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The Court received and docketed Miller's complaint on December 30, 2025. (Doc. 1). This complaint names the following five defendants: (1) Warden James, later identified as Warden James Youngkin ("Youngkin"), Warden at Carbon County Correctional Facility; (2) Sergeant Flexer ("Flexer"), Sergeant at Carbon County Correctional Facility; (3) Sergeant Thamaras ("Thamaras"), Sergeant at Carbon County Correctional Facility; (4) Corrections Officer Cayton Hunsicker ("Hunsicker"), Corrections Officer at Carbon County Correctional Facility; and (5) Physicians Assistant Rebecca ("Rebecca"), PrimeCare employee at Carbon County Correctional Facility. (Doc. 1, at 1-4).

In the complaint, Miller alleges that he had notified corrections and medical employees at Carbon County Correctional Facility of his medical history and shown them his dark purplish bruise on his left hip and notified them of being struck on the top of his head prior to his arrival at the facility. (Doc. 1, at 5). Miller then alleges that on March 23, 2023, he complained of a severe headache and nonparty officers escorted him into the medical exam room. (Doc. 1, at 5). He states that no medical personnel were present because it was evening. (Doc. 1, at 5). Miller states that Defendants Flexer and Thamaras entered the exam room, lifted him under the arm, carried him to the medical holding cell, and "heaved" him into the cell where he hit the commode. (Doc. 1, at 5). Miller states that the conduct resulted in further injury to his head, neck, back and hip. (Doc. 1, at 5).

Next, Miller alleges that on August 31, 2023 after he had notified prison officials and the PREA coordinator at the facility of ongoing violations, he requested to be moved either into or out of a special block. (Doc. 1, at 6).

Miller alleges that on October 17, 2023, Defendant Hunsicker slammed a cell door upon his back while he was following Defendant Hunsicker's orders. (Doc. 1, at 6). Miller states that he filed a grievance on the issue, and Defendant Flexer stated there was no support for his complaint. (Doc. 1, at 6). In February of 2024, Miller requested that Correctional Officer Cheverae as a witness on the appeal of his grievance. (Doc. 1, at 6). Miller states that he was not granted this request. (Doc. 1, at 6).

Miller further alleges that prison officials implemented handcuffs and shackles for all movement outside of his housing quarters. (Doc. 1, at 6). Miller alleges that a left leg brace was prescribed by St. Luke's Medical center in June of 2006. (Doc. 1, at 6). Miller states that based on his preexisting medical issues with ambulation, the required shackles caused him to

fall multiple times. (Doc. 1, at 6). Miller states that none of his behavior supported the need for shackles. (Doc. 1, at 6).

Miller states that Defendant Youngkin refused to answer requests and grievances regarding his medical history or witnesses in violation of his First, Eighth, and Fourteenth Amendments. (Doc. 1, at 7). Miller also brings a claim against Defendant Youngkin under the Americans with Disabilities Act ("ADA"). (Doc. 1, at 7).

Miller brings Eighth Amendment claims of excessive force and deliberate indifference against Defendants Flexer, Thomaras, and Hunskicker. (Doc. 1, at 7). He also alleges that Defendant Rebecca refused to treat his condition of Hepetitius-C and refused care at the methadone clinic for 13 months "ignoring or circumventing requests, grievances, and sick calls to be seen for vision concerns and Plaintiff Miller having been retaliated against for excessive of his right to seek redress from the prison through use of prison grievance system." (Doc. 1, at 7). He states that Defendant Rebecca violated his Eighth and Fourteenth Amendment rights. (Doc. 1, at 7).

The Court will grant the motion to proceed *in forma pauperis* and screen the amended complaint pursuant to 28 U.S.C. § 1915A.

## II.    STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with

respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In this case, because Miller is a prisoner suing a governmental employee and brings his suit *in forma pauperis*, both provisions apply. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of

action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Iqbal*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III.   DISCUSSION

### A.   ALL CLAIMS AGAINST DEFENDANT YOUNGKIN WILL BE DISMISSED.

Miller has brought claims under 42 U.S.C. § 1983 and the ADA against Defendant Youngkin premised on his role as the Warden of Carbon County Correctional Facility. (Doc. 1).

### 1. Section 1983 Claims

A review of the facts pleaded in the complaint demonstrates that Miller has premised liability for the Section 1983 claims against Defendant Younkin under a theory of *respondeat superior* and in his role in reviewing grievances. (Doc. 1, at 7).

Section 1983 provides that persons acting under color of state law may be held liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct, and "cannot be predicated solely on the operation of *respondeat superior.*" *Evancho v. Fishser*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs.... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time, place, and personal responsibility. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct. *See Rode*, 845 F.2d at 1207-08 (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's

knowledge of an underlying constitutional violation at the time it occurred); *Dooley v. Wetzel,* 957 F.3d 366, 374 (3d Cir. 2020) (Grievance Coordinator and Superintendent's involvement in review and denial of grievance insufficient to establish personal involvement). Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode,* 845 F.2d at 1208.

Here, Miller alleges that Defendant Youngkin refused to answer requests and grievances, failed to correct misconduct, and encouraged the continuation of misconduct. (Doc. 1, at 7). As set forth above, the review of a grievance after the fact is not sufficient to state a Section 1983 claim. Furthermore, Miller does not allege with any specificity how Defendant Youngkin encouraged continued misconduct. Therefore, Miller has failed to state a claim under Section 1983 against Defendant Youngkin. The Court will dismiss the claims without prejudice.

### 2. ADA Claims

Miller attempts to bring a claim against Defendant Youngkin under the ADA. (Doc. 1, at 7). However, the Court finds that there is no individual liability under the ADA and that any attempt to raise an ADA claim against Defendant Youngkin in his official capacity cannot succeed.

The Third Circuit has not directly answered the question of whether there can be individual liability under Title II. *See Brown v. Deparlos,* 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (nonprecedential) ("This Court has yet to address individual liability under Title II of the ADA[.]"). However, nearly all of the Third Circuit's decisions regarding personal liability under the majority of ADA's other titles point toward the absence of individual liability. *See*

*Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (finding that plaintiff's claims "for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees"); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that individual defendants did not own, lease, or operate Thiel College and thus were "not subject to individual liability under Title III of the ADA"); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (nonprecedential) (noting individual defendant could not be held liable under ADA); *Wardlaw v. Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (nonprecedential) (explaining that plaintiff's ADA claims "were not actionable against the individual defendants"). Additionally, other circuit courts of appeals have found no individual liability under Title II. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*). Consistent with these cases, the Court will dismiss Miller's claim under the ADA against Defendant Youngkin in his individual capacity with prejudice.

To the extent Miller is suing the Defendant Youngkin in his official capacities, the claim may be viable as the Supreme Court has held that Title II of the ADA validly abrogates

sovereign immunity as to state conduct that violates the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023)("state officers *can* be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment") (emphasis in original). However, as the complaint currently reads, Miller has failed to state and ADA claim.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim under Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *McPherson v. County of Dauphin*, No. 19-1865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020).

Noting in the alleged facts demonstrate that Miller has alleged he is a qualified individual with a disability. He alleges that he required a knee brace as early as 2006 but does not state how he is an qualified individual with a disability. Additionally, he has failed to allege that he was excluded from participation or denied the benefits of some public entity's services, programs, or activities. Therefore, the ADA claim against Defendant Youngkin in his official capacity will be dismissed without prejudice.

B. ALL CLAIMS AGAINST DEFENDANT REBECCA WILL BE DISMISSED.

Miller brings Eighth and Fourteenth Amendment claims against Defendant Rebecca. (Doc. 1, at 7). However, Miller has failed to allege any facts concerning Defendant Rebecca.

10

As set forth above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time, place, and personal responsibility. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Here, the alleged facts are devoid of any alleged actions or inactions by Defendant Rebecca. Therefore, all claims against her will be dismissed without prejudice.

C. ALL MOTIONS FOR APPOINTMENT OF COUNSEL WILL BE DENIED.

Miller has filed a motion for appointment of counsel alleging that he cannot afford counsel, that imprisonment would greatly limit his ability to litigate, and that he has made repeated unsuccessful efforts to obtain a lawyer. (Doc. 3).

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019). The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law. *Tabron*, 6 F.3d at 155. If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

(1)  the plaintiff's ability to present his or her own case;
(2)  the complexity of the legal issues;
(3)  the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
(4)  the plaintiff's ability to retain counsel on his or her own behalf;

11

(5)    the extent to which a case is likely to turn on credibility determinations, and;

(6)    whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57. This list of factors is non-exhaustive, and no single factor is determinative. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)). Instead, these factors serve as guideposts for the district courts to ensure that the precious commodity of volunteer attorney time is not "wasted on frivolous cases." *Montgomery*, 294 F.3d at 499.

Miller's complaint has not yet been served on Defendants. Therefore, the appointment of counsel is premature in this action, and the motion will be dismissed without prejudice. Miller may renew his motion, or the Court may raise the appointment of counsel *sua sponte* if deemed appropriate.

12

## IV.    CONCLUSION

For the above stated reasons, the Court will grant Miller's motions to proceed *in forma pauperis* and screen the complaint pursuant to Section 1915A. The Court will dismiss all Section 1983 claims against Defendants Youngkin and Rebecca without prejudice, will dismiss the ADA claim against Defendant Youngkin in his individual capacity with prejudice and will dismiss the ADA claim against Defendant Youngkin in his official capacity without prejudice. The surviving claims include Eighth Amendment excessive force and deliberate indifference claims against Defendants Flexer, Thamaras, and Hunsicker. The Court will serve these three Defendants a copy of the complaint. The Court will also deny the motion for appointment of counsel without prejudice.

An appropriate order follows.


**Dated: May 22, 2026**                                          *s/ Karoline Mehalchick*
                                                                                **KAROLINE MEHALCHICK**
                                                                                **United States District Judge**

13